# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

J.E. DUNN CONSTRUCTION COMPANY,    )
                                       )
               Plaintiff,      )
vs.                                 )     Case No.  05-0092-CV-W-FJG
                                         )
UNDERWRITERS AT LLOYD'S LONDON    )
SYNDICATE #2623, (AFB) SYNDICATE, et al.,    )
                                       )
             Defendants.    )

# ORDER

Pending before the Court are (1) Henney & Partners, Ltd.'s Motion to Dismiss Third-Party Complaint for Insufficient Service of Process and Lack of Personal Jurisdiction (Doc. No. 56); (2) Defendant Henney & Partners Ltd.'s Motion to Dismiss Second Amended Complaint for Lack of Personal Jurisdiction (Doc. No. 133); (3) Defendant Christopher Henney's Motion to Dismiss Second Amended Complaint for Lack of Personal Jurisdiction (Doc. No. 151); (4) Defendant Corrie Bauckham Batts, Ltd.'s Motion to Dismiss Cross-Claim for Lack of Personal Jurisdiction (Doc. No. 42); (5) Defendant Corrie Bauckham Batts, Ltd.'s Motion to Dismiss Second Amended Complaint for Lack of Personal Jurisdiction (Doc. No. 114); (6) Defendant Chandarana's Motion to Dismiss the Second Amended Complaint (Doc. No. 131); (7) Defendant Professional Underwriters Agency, Inc.'s Motion to Dismiss Counts I and II of the Second Amended Complaint (Doc. No. 129); (8) Defendants Underwriters at Lloyd's London, Syndicates 2623, 623, 2488, 33, and Zurich Specialties London Limited's Motion to Dismiss Counts I, II, and III of the First Amended Complaint (Doc. No. 78); and (9) Defendant Underwriters at Lloyd's London,

Syndicates 2623, 623, 2488, 33, and Zurich Specialties London Limited's Motion to Dismiss Counts I, II, and III of the Second Amended Complaint (Doc. No. 140). Each will be considered below.

## I. Background

In 2003 J.E. Dunn needed $20 million in construction professional liability insurance. Second Amended Complaint, Doc. No. 108, ¶ 17. It obtained the insurance by first contacting a broker, Lockton Companies, Inc. ("Lockton"). Id. at ¶ 16. Lockton, in turn, contacted another insurance broker, Professional Underwriters Agency, Ltd. ("PUA"), an Illinois broker. Id. PUA, allegedly through its employee Ramkrishna Himji Chandarana, then contacted Corrie Bauckham Batts, Ltd. ("CBB"), Henney & Partners, Ltd. ("Henney & Partners") and Chris Henney, London-based insurance brokers. Id. Defendant PUA asserts that CBB and Henney & Partners were repeatedly informed by PUA that plaintiff J.E. Dunn was located in Missouri. See Doc. No. 58, Ex. A.

On December 31, 2002, Henney & Partners advised PUA that the $20 million in coverage for Dunn had been bound, including the $2.0 million primary coverage. Doc. No. 58 ¶¶ 10, 11 and Ex. 7 thereto. Based on Henney & Partners' confirmation that coverage was bound, PUA issued a binder to Dunn for the $2.0 million in primary coverage. Id. ¶ 12 and Ex. 8 thereto.

In January 2003, PUA forwarded a list of policies to Henney & Partners, along with another copy of the submission worksheet applicable to Dunn. Id. ¶ 13 and Ex. 9 thereto. Both the list of policies and the worksheet showed that Dunn was a Missouri resident. Later, In January 2003, CBB issued three cover notes for the three excess layers of insurance coverage for Dunn. Each cover note sets out Dunn's Missouri address. Id. ¶ 14,

2

and Ex. 10 thereto. Henney & Partners transmitted these cover notes to PUA. Id. ¶ 14, and Ex. 11 thereto.

In February 2003, PUA forwarded a premium bordereaux for January 2003 to Henney & Partners listing Dunn as located in Missouri. Id. ¶¶ 10, 11 and Ex. 7 thereto. PUA sent the premiums for Dunn's coverage to CBB through Henney & Partners. Id. ¶¶ 15, 17 and Exs. 12 and 14 thereto. CBB and Henney & Partners received a 5% commission for the placement of Dunn's insurance. Id. ¶ 23.

In June of 2003, Henney & Partners advised PUA that the $2.0 million primary coverage for Dunn was going to be divided with the first $1.0 million placed with Harrington Syndicate #2000 and the remaining coverage ($1.0 million excess of $1.0 million) placed with the Beazley Syndicate. Id. ¶ 18. PUA prepared a certificate of insurance (Certificate No. AE03242012) reflecting that the primary limits were now $1.0 million. Id. ¶ 19. PUA sent a copy of the $1.0 million primary certificate to Lockton and Henney. Id. The certificate showed that Dunn was located in Kansas City, Missouri. Id.

By letter of January 27, 2004, the Chairman of CBB advised PUA by letter that CBB had unilaterally: put Chris Henney (the only broker employee of Henney) on sabbatical; closed Henney & Partners to future activities, assumed the remaining businesses of Henney & Partners, and assumed all of PUA's issues related to Henney & Partners. Id. ¶ 25; Doc. No. 58, Ex. C. Shortly thereafter, PUA learned for the first time that the premiums PUA had sent to Henney for Dunn's primary coverage had never been sent to Harrington Syndicate. Doc. No. 58, Ex. A, ¶ 24.

In August 2004, Lockton, on behalf of Dunn, demanded that PUA and CBB return the premiums for both the primary and excess policies. Id. ¶ 26, and Ex. 19 thereto.

Thereafter, CBB returned the premium for the $2.0 primary coverage, along with its commission, to Dunn. Id. ¶ 26. In August and September 2004, CBB sent two letters to Lockton in Missouri seeking to address issues relating to Dunn's professional liability coverage. Id. ¶¶ 27, 28.

In this lawsuit, J.E. Dunn alleges it is entitled to a return of the premiums paid for the $18 million in excess coverage and punitive damages because the Primary Coverage does not exist and "in fact never did exist." Id. at ¶ 23. It further alleges that because the Primary Coverage does not exist, Underwriters and Zurich's excess policies are "ineffective." Id. at ¶ 24. J.E. Dunn alleges four (4) claims: (1) fraudulent misrepresentation; (2) fraudulent concealment; (3) negligent misrepresentation; and (4) unjust enrichment. See id. at ¶¶ 25-54. PUA has brought a cross-claim against CBB and a third-party complaint against Henney & Partners for indemnity and contribution.

## II. Discussion

### A. Motions to Dismiss for Lack of Personal Jurisdiction

#### 1. Standard

The party seeking to invoke the jurisdiction of a federal court bears the burden of establishing that jurisdiction exists. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 n. 3 (8th Cir. 1982)(citations omitted). To defeat a motion to dismiss for lack of personal jurisdiction, the non-moving party need only make a prima facie showing of jurisdiction. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991) (citations omitted). Where the Court relies on only the pleadings and affidavits in making its decision, and does not conduct an evidentiary hearing on the issue of jurisdiction, it views the facts in the light most favorable to the non-moving party, and

4

resolves all factual conflicts in favor of that party.  Id.

A federal court may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and the Due Process Clause of the Constitution.  Pecoraro v. Sky Ranch For Boys, Inc., 340 F.3d 558, 561 (8th Cir. 2003).  Because Missouri's long-arm statute has been construed to permit jurisdiction to the fullest extent permitted by the Due Process Clause, see Porter v. Berall, 293 F.3d 1073, 1074 (8th Cir. 2002), the Court will "turn immediately to the question of whether the assertion of personal jurisdiction would violate due process."  Id. at 1075.

A state may exercise personal jurisdiction over a nonresident defendant consistent with due process when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945)(quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  The defendant's contact with the forum state must be purposeful and such that defendant "should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  A party may anticipate being haled into court in a particular jurisdiction if it "purposefully directed" its activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)(citations omitted).  Furthermore, the contacts with the forum state must be more than random, fortuitous or attenuated.  Id. at 475.

Two types of personal jurisdiction exist: general and specific.  If the exercise of jurisdiction does not depend on the relationship between the cause of action and the defendant's contacts with the forum state, the exercise of personal jurisdiction is one of

5

general jurisdiction.  <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 415 n.9 (1984).  General jurisdiction is only applicable if the defendants' contacts with the forum state are continuous and systematic.  <u>Id.</u> at 414.  If, on the other hand, the cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction.  <u>Id.</u> at 414 n.8.

In the Eighth Circuit, courts examine five factors in determining whether a non-resident defendant's contacts are sufficient to support the exercise of personal jurisdiction in the forum state: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of the contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties.  <u>Pecoraro</u>, 340 F.3d at 562.  The first three factors are of primary importance, while the last two are of secondary importance.  <u>Id.</u>

With these legal standards in mind, the Court will consider each of the pending motions to dismiss for lack of personal jurisdiction.

> 2.  Henney & Partners' Motion to Dismiss Third-Party Complaint for Insufficient Service of Process and Lack of Personal Jurisdiction (Doc. No. 56) and Defendant Henney & Partners' Motion to Dismiss Second Amended Complaint for Lack of Personal Jurisdiction (Doc. No. 133)

In these related motions, Henney & Partners moves to dismiss for insufficient service of process and lack of personal jurisdiction.  As Henney & Partners has now been properly served (<u>see</u> Doc. No. 65, n. 1), Henney & Partners' motion to dismiss for insufficient service of process is **DENIED AS MOOT.**  The Court will now turn to the motions to dismiss for lack of personal jurisdiction.

Henney & Partners is a resident of the United Kingdom whose registered office is

6

in London, United Kingdom. See Doc. No. 57, Ex. A, ¶ 2. Henney & Partners is not registered to do business in Missouri, and it does not have an agent for the service of process in Missouri. Id. at ¶ 4. Henney & Partners has no offices in Missouri, does not own or lease property in Missouri, has no address or telephone listing in Missouri, and has no bank account in Missouri. Id. Additionally, Henney & Partners maintains no employees in Missouri, pays no taxes in Missouri, and does not advertise or market in Missouri. Id.

In connection with the transactions described in the Second Amended Complaint and Third-Party Complaint, Henney & Partners made no visits to Missouri. Id. at ¶ 5. Additionally, Henney & Partners made no telephone calls, sent no faxes, and sent no letters to Missouri. Id. at ¶ 5. All of Henney & Partners' communications in connection with these transactions took place through e-mails to PUA in Illinois, and during meetings with PUA in London. Id. at ¶ 8, PUA's Cross-Claim and Third-Party Complaint, Doc. No. 29, ¶¶ 11-29.

Henney & Partners states it never acted as an agent for Plaintiff J.E. Dunn or for its insurance broker, Lockton Insurance ("Lockton"). Doc. No. 57, Ex. A, ¶ 6. Henney & Partners used the services of Defendant Corrie Bauckham Batts, Ltd. ("CBB") for the purposes of placing its business with insurers at Lloyd's. See id. at ¶ 7. Henney & Partners in turn transacted business with PUA, an Illinois corporation. Id. Henney & Partners states that its connection with Dunn arises solely through its transaction of business with Defendant and Third-Party Plaintiff PUA. Id. at ¶ 6. The connection between Dunn and Henney arises solely from the fact that Lockton sought to arrange Dunn's insurance with PUA. Id. at ¶ 6. At no time did Henney have direct contact with J.E. Dunn or Lockton regarding the placement of the excess coverage. See id. ¶ 9.

7

It is apparent, given the above, that general jurisdiction over Henney & Partners is not present; therefore, the Court will turn to whether specific jurisdiction can be demonstrated. Henney & Partners argues that it has no direct or indirect contacts with Missouri that would give rise to personal jurisdiction. The facts above indicate that all of Henney & Partners' contacts and communications were in the United Kingdom or Illinois.

Plaintiff J.E. Dunn and third-party plaintiff PUA argue that because Henney & Partners knew that it was placing insurance for a Missouri resident, that fact alone is sufficient for this Court to exercise personal jurisdiction over Henney & Partners.[1]

However, as discussed by Henney & Partners, the fact that Henney & Partners may have known it was placing insurance for a Missouri insured is not sufficient to establish minimum contacts under the "effects test" of Calder v. Jones, 465 U.S. 783 (1984). Based on the facts of Calder, the Third Circuit has devised a three-factor test that has been approved and utilized by courts in the Eighth Circuit[2]: (1) the defendant committed an intentional tort; (2) the forum was the focal point of the harm suffered by the plaintiff, and (3) the forum was the focal point of the tortious activity in that the tort was "expressly aimed" at the forum. See Imo Indus., Inc. v. Keikert AG, 155 F.3d 254, 265-66 (3d Cir. 1998). Under this approach, "[t]he defendant must 'manifest behavior intentionally targeted

---

[1]Third-party plaintiff PUA also provides evidence that Henney & Partners and/or CBB placed insurance on behalf of PUA for nine other Missouri insureds prior to 2003. This evidence, however, is not sufficient to demonstrate general jurisdiction and not relevant as to specific jurisdiction.

[2]See Sproqit Tech., Inc. v. Visto Corp., 2004 WL 2453054, *2 (D. Minn. 2004); Mulcahy v. Cheetah Learning LLC, 2002 WL 31053211, *4-5 (D. Minn. 2002); Crystal Group, Inc. v. Boston Communications Group, Inc., 2000 WL 34031499, *4 (N.D. Iowa 2000); Griffis v. Luban, 646 N.W.2d 527, 532, 534 (Minn. 2002).

at and focused on' the forum for <u>Calder</u> to be satisfied." <u>Id.</u> at 265. The court further noted that "[i]n the typical case, this will require some type of 'entry' into the forum state by the defendant." <u>Id.</u> <u>See also</u> <u>Gen. Elec. Capital Corp. v. Grossman</u>, 991 F.2d 1376, 1387-88 (8th Cir. 1993) (finding no jurisdiction over Canadian accounting firms in an action alleging fraud, civil conspiracy, and interference with a business contract, even though the Canadian firms knew that the plaintiff was located in Minnesota and would be injured there, because the "focal point" of the alleged wrongdoing was in Canada); <u>Bell Paper Box, Inc.</u> <u>v. Trans Western Polymers, Inc.</u>, 53 F.3d 920, 922 (8th Cir. 1995) (finding the defendant *itself* must create a substantial connection with the forum, and noting that "'foreseeability' [of an impact within the forum] alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause").

Here, as discussed by Henney & Partners, the "focal points" of its actions were London and Illinois. PUA contacted Henney & Partners in London; Henney and Partners subsequently contacted CBB in London to facilitate placement of the insurance; Henney facilitated the placement of the binders with the defendant Underwriters in London; and all of Henney and Partners' communications occurred in London or Illinois.

Furthermore, the assertion of personal jurisdiction over Henney & Partners in these circumstances would violate traditional notions of fair play and substantial justice. <u>See</u> <u>Burlington Indus. Inc. v. Maples Indus. Inc.</u>, 97 F.3d 1100, 1102 (8th Cir. 1996). First, the nature and quality of the defendant's contacts with the forum state are insufficient, in that Henney & Partners has no direct contacts with Missouri and sent no communications related to this matter to Missouri. Second, as there are no contacts related to this action in Missouri, the quantity of contacts is insufficient to establish personal jurisdiction. Third,

9

as there are no contacts related to this action in Missouri, plaintiff and third-party plaintiff cannot establish a relationship between the cause of action and the contacts. Although plaintiff is a Missouri resident and Missouri has an interest in providing a forum for its residents, this factor is not of primary importance. See Pecoraro, 340 F.3d at 562. Finally, Missouri is only convenient for one party, plaintiff J.E. Dunn; nine of the eleven defendants are located in the United Kingdom, and the remaining two defendants are located in Illinois.

After consideration of the parties' various motions, and weighing the above factors, the Court finds that it does not have personal jurisdiction over Henney & Sons. Therefore, Henney & Partners' Motion to Dismiss Third-Party Complaint for Lack of Personal Jurisdiction (Doc. No. 56) and Defendant Henney & Partners' Motion to Dismiss Second Amended Complaint for Lack of Personal Jurisdiction (Doc. No. 133) are **GRANTED**.

   3.   Defendant Christopher Henney's Motion to Dismiss Second Amended
        Complaint for Lack of Personal Jurisdiction (Doc. No. 151)

Defendant Christopher Henney provides an affidavit that (1) he is a resident of the United Kingdom residing in London; (2) he transacts no business in Missouri; (3) he has no agent in Missouri for service of process; (4) he maintains no offices or other business facilities in Missouri; (5) he does not own or lease property in Missouri, has no Missouri mailing address, and no Missouri bank accounts; and (6) he does not pay taxes in Missouri and is involved in no other litigation in Missouri. See Doc. No. 152, Ex. A. Further, defendant Christopher Henney states that, in connection with the transactions described in the second amended complaint, he made no visits to Missouri, nor did he make any telephone calls, send any faxes, or send any letters to Missouri. Id. Christopher Henney states he had no contact with plaintiff before the second amended complaint was filed. All

10

of Christopher Henney's actions were apparently taken on behalf of Henney & Partners in London.

Christopher Henney states that the above demonstrates he has no contacts sufficient to establish minimum contacts with the state of Missouri. As discussed above in relation to Henney & Partners' motions to dismiss (Doc. Nos. 56 and 133), the Court agrees with defendant Christopher Henney that the mere knowledge that plaintiff was located in Missouri, without other activities "purposefully directed" at Missouri, is insufficient to support personal jurisdiction. Therefore, Defendant Christopher Henney's Motion to Dismiss Second Amended Complaint for Lack of Personal Jurisdiction (Doc. No. 151) is **GRANTED.**

    4.    Corrie Bauckham Batts, Ltd.'s Motion to Dismiss Cross-Claim for Lack of Personal Jurisdiction (Doc. No. 42) and Defendant Corrie Bauckham Batts, Ltd.'s Motion to Dismiss Second Amended Complaint for Lack of Personal Jurisdiction (Doc. No. 114)

Corrie Bauckham Batts, Ltd. ("CBB") is a resident of the United Kingdom whose registered office is in London, United Kingdom. See Doc. No. 11, Ex. A, ¶ 2. CBB is not registered to do business in Missouri, and it does not have an agent for the service of process in Missouri. Id. at ¶ 4. CBB has no offices in Missouri, does not own or lease property in Missouri, has no address or telephone listing in Missouri, and has no bank account in Missouri. Id. Additionally, CBB maintains no employees in Missouri, pays no taxes in Missouri, and does not advertise or market in Missouri. Id.

CBB has placed insurance in the London insurance market for one Missouri insured. See id. at ¶ 8. CBB's contacts with this insured have no connection to the present suit brought by J.E. Dunn. Id. In connection with the transactions described in J.E. Dunn's Second Amended Complaint, CBB made no visits to Missouri. Id. at ¶ 5. Additionally, CBB

11

made no telephone calls, sent no faxes, and sent no letters to Missouri. Id.

At no stage has CBB acted as an agent for J.E. Dunn or for its insurance broker, Lockton Insurance ("Lockton"). Id. at ¶ 6. CBB's connection with J.E. Dunn arises solely through Henney & Partners, in which CBB is a 65 percent shareholder. Id. Henney & Partners used the services of CBB for the purposes of placing its business with insurers at Lloyd's. Id. Henney & Partners in turn transacted business with PUA, an Illinois corporation. Id. The connection between J.E. Dunn and CBB arises from the fact that Lockton sought to arrange J.E. Dunn's insurance with PUA. Id.

On August 13, 2004, CBB and PUA received a letter from Lockton demanding that certain premium monies be paid to Lockton. Id. at ¶ 7. Lockton advised that, unless the premium monies were repaid, a lawsuit would be filed against CBB, PUA and others. Id. Prior to Lockton's letter, CBB had not received any communication from Lockton, or from any other Missouri entity, concerning this matter. Id. On August 18, 2004, PUA's attorneys instructed CBB's UK solicitors that certain premium funds being held for PUA in CBB's trust account were to be returned directly to Lockton. See id. at ¶ 7. On August 19, 2004, as requested by PUA, CBB's London bank wired the PUA premium monies directly to Lockton's bank. See id. Apart from two letters to Lockton dated August 19, 2004 and September 3, 2004, concerning its claim for repayment of premium, CBB did not correspond with Lockton prior to Dunn filing its petition on September 17, 2004. Id.

Again, general jurisdiction is not present over this defendant on these facts, so the Court will turn immediately to whether specific jurisdiction exists. As with Henney & Partners and Christopher Henney, defendant CBB argues that the quantity and quality of its contacts with Missouri is not sufficient to support personal jurisdiction in this Court.

12

CBB's only contacts with Missouri came after the threat of litigation, when it wired premiums directly to Lockton. These contacts also do not relate to plaintiff's allegations of fraud, negligence, and unjust enrichment, which are based on actions that took place in 2002-2003. Further, to the extent that PUA asserts that CBB was negligent toward PUA and owed PUA a duty of care, the Court notes that PUA is located in Illinois, and so any alleged negligence was targeted at Illinois, not Missouri. In short, asserting jurisdiction over defendant CBB would violate notions of fair play and substantial justice. See Pecoraro, 340 F.3d at 562.[3]

Therefore, Corrie Bauckham Batts, Ltd.'s Motion to Dismiss Cross-Claim for Lack of Personal Jurisdiction (Doc. No. 42) and Defendant Corrie Bauckham Batts, Ltd.'s Motion to Dismiss Second Amended Complaint for Lack of Personal Jurisdiction (Doc. No. 114) are **GRANTED.**

        5.     Defendant Chandarana's Motion to Dismiss the Second Amended Complaint (Doc. No. 131)

Defendant Ramkrishna Himji Chandarana moves to dismiss the second amended complaint pursuant to Rules 12(b)(2), 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Defendant Chandarana argues (1) the Court has no personal jurisdiction over him, as he at all times was acting as an employee of PUA (which is an Illinois corporation with its sole office in Oak Brook Terrace, Illinois); (2) all of the allegations relate to defendant Chandarana's conduct as an agent of a disclosed principal, PUA, and under

---

[3]PUA also argues that CBB is a successor in interest to Henney & Partners, or is the alter-ego of Henney & Partners, and that Henney's actions subject CBB to this Court's jurisdiction. However, as discussed above, this Court does not have personal jurisdiction over Henney & Partners, so these arguments would not assist PUA in establishing that jurisdiction exists as to CBB.

13

Missouri law an agent is not liable for the acts done within the scope of his authority for and on behalf of a disclosed principal; and (3) counts I and II fail to allege fraud with sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure, as those counts allege fraud generally among all named defendants and fail to identify the specific misrepresentation made, when it was made, by whom and to whom.

Defendant Chandarana was (and is) an employee of PUA. Plaintiff alleges that PUA acted "through Chandarana" in its dealings with the other defendants. Second Amended Complaint, Doc. No. 108, ¶ 16. Plaintiff has not alleged any actions by Defendant Chandarana separate and apart from his actions on behalf of PUA.

a.  Personal Jurisdiction

Defendant states that the jurisdictional statement in the second amended complaint is vague and conclusory. The second amended complaint states, "The Court has jurisdiction over Chandarana because he transacted business in the state of Missouri, entered into a contract in the state and committed a tortious act within the state." Doc. No. 108 at ¶ 8. Defendant Chandarana notes that plaintiff has merely joined Chandarana with every allegation against PUA, making no distinction between PUA and Chandarana. Defendant Chandarana states that the Eighth Circuit recognizes, "The law is clear that a corporate officer or agent who has contact with the forum state only with regard to the performance of his corporate duties does not thereby become subject to jurisdiction in his or her individual capacity." Arkansas Growers Cooperative Ass'n v. Alchemy Indus., Inc., 797 F.2d 565, 574 (8th Cir. 1986). As no actions outside the scope of employment with PUA are alleged, defendant Chandarana states he should be dismissed from this action.

Plaintiff notes that the Arkansas Growers case involved application of Arkansas'

14

long-arm statute, not Missouri's long-arm statute.  Plaintiff further notes that Missouri courts have rejected the "fiduciary shield doctrine."  See Cantrell v. Extradition Corp. of America, 789 F.Supp. 306, 310 (W.D. Mo. 1992); Peabody Holding Co., Inc. v. Costain Group PLC, 808 F.Supp. 1425, 1435 (E.D. Mo. 1992).  Plaintiff also states that its second amended complaint alleges "that Defendant Chandarana himself, on behalf of PUA, engaged in fraudulent conduct and made negligent misrepresentations causing damage to Dunn."  See Doc. No. 148, p. 4.  In Arkansas Growers, the non-resident guarantors who were dismissed from the lawsuit were passive investors and did not inject themselves personally in the negotiations of the contract at issue in the lawsuit.  See 797 F.2d 573-74.

The Court finds that plaintiff has adequately stated a claim for which personal jurisdiction could exist over defendant Chandarana, given that Missouri courts have rejected the fiduciary shield doctrine.  Therefore, the motion to dismiss will be **DENIED** as to this issue.

b.    Liability of Agent

Again, defendant Chandarana notes that under Missouri law, "An agent is not liable for lawful acts done within the scope of his authority for and on behalf of a disclosed principal.  That liability, if any, is that of the principal."  K & G Farms v. Monroe County Serv. Co., 134 S.W.3d 40, 45 (E.D. Mo. 2003)(quoting Austin v. Trotter's Corp., 815 S.W.2d 951, 958 (Mo. Ct. App. 1991)); see also Hill v. Farm Credit Bank of St. Louis, , 726 F. Supp. 1201, 1207 (E.D. Mo. 1989)("Under the general tenets of agency law, a third party has no right of action against an agent who acts on behalf of a disclosed principal.").  Defendant Chandarana states that the second amended complaint fails to allege that Chandarana was acting outside the scope of employment or that his principal (PUA) was

15

undisclosed.

Plaintiff states that defendant's argument ignore basic principles of tort law. "An individual is not protected from liability simply because the acts constituting the tort 'were done in the scope and course, and pertained to, the duties of his employment." State ex rel. Doe Run Resources Corp. v. Neill, 128 S.W.3d 502, 505 (Mo. banc 2004). See also Curlee v. Donaldson, 233 S.W.2d 746, 748 (Mo. App. 1950); Grothe v. Heltebrand, 946 S.W.2d 301 (Mo. App. 1997). As plaintiff alleges that defendant Chandarana committed fraud and other torts, plaintiff states that the fact that he may have been acting in the course and scope of his employment does not shield him from liability under the counts of the Second Amended Complaint.

After reviewing the parties' briefs and the Second Amended Complaint, the Court finds that a determination as to this issue is more properly the subject of a motion for summary judgment, where facts may be developed by the parties. Therefore, defendant Chandarana's motion to dismiss is **DENIED** as to this issue.

c.     Lack of Particularity in Fraud Claims

Counts I and II of the second amended complaint contain fraud claims. In Count I, Plaintiff alleges that (1) defendants "represented to Plaintiff Dunn that it had $20 million of construction professional liability insurance for the year 2003" (Doc. No. 108, ¶ 26); (2) defendants "knew that those representations were false and that no insurance coverage existed for the first $2 million of insurance coverage" (Doc. No. 108, ¶ 26); (3) defendants' representations "were material to Plaintiff Dunn's decision to enter into the insurance contracts" (Doc. No. 108, ¶ 27); (4) defendants knew the representations were "false" (Doc. No. 108, ¶ 28); (5) defendants "intended for Plaintiff Dunn to act upon the representations"

16

(Doc. No. 108, ¶ 29); (6) Plaintiff "relied upon the truth of the representations" (Doc. No. 108, ¶ 31); (7) Plaintiff Dunn was "fraudulently induced to enter into the insurance contracts" (Doc. No. 108, ¶ 33); and (8), because "Plaintiff Dunn was fraudulently induced to enter into the various insurance contracts, those contracts are void or can be rescinded" (Doc. No. 108, ¶ 34).

In Count II, plaintiff alleges: (1) "Defendants knew that those insurance contracts were ineffective because there was no insurance coverage for the first $2 million layer" (Doc. No. 108, ¶ 37); (2) "Defendants had a duty to inform Plaintiff Dunn that no such coverage existed" (Doc. No. 108, ¶ 38); (3) "Defendants did not inform Plaintiff Dunn that no insurance coverage existed for the first $2 million layer [which] was material to Plaintiff Dunn's decision to enter into the insurance contracts" (Doc. No. 108, ¶ 39); (4) "Defendants knew that the fact that Plaintiff Dunn did not have insurance coverage for the first $2 million layer was material to Plaintiff Dunn's agreement to enter into the insurance contracts and Defendants intended for Plaintiff Dunn to act in that matter" (Doc. No. 108, ¶ 41); (5) "Plaintiff Dunn relied upon Defendants to inform it if such insurance coverage did not exist" (Doc. No. 108, ¶ 42); and (6) "Had Plaintiff Dunn known there was no insurance coverage for the first $2 million layer, Plaintiff Dunn would not have entered into the insurance contracts" and therefore has been damaged (Doc. No. 108, ¶ 44).

Defendant Chandarana states that these two counts fail to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, in that Dunn does not identify the specific representations made, when, by whom, and to whom. Additionally, defendant Chandarana notes that plaintiff does not distinguish between defendants in its fraud claims. The Eighth Circuit has held, "This particularity requirement

demands a higher degree of notice than that required for other claims.  The claim must identify who, what, where, when, and how." U.S. ex rel. Costner v. U.S., 317 F.3d 883, 888 (8th Cir. 2003).  "Thus, a plaintiff must plead such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby. [C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Schaller Telephone Co. v. Golden Sky Systems, Inc., 298 F.3d 736, 746 (8th Cir. 2002) (internal citations and quotation marks omitted).  Defendant Chandarana states that the allegations as pled in the Second Amended Complaint, which do not distinguish among eleven named defendants, does not provide adequate notice to each individual defendant as to which acts of fraud are alleged against them.

The Court agrees with defendant Chandarana's assessment.  Plaintiff has not pled fraud with the specificity required by the Federal Rules of Civil Procedure.  However, in response to defendant Chandarana's motion to dismiss and several other defendants' motions to dismiss (see below), plaintiff requests that the Court grant plaintiff leave to file an amended complaint in which it will set forth the facts upon which Counts I, II and III of the second amended complaint are based.  The Court construes this request as a motion for leave to amend plaintiff's complaint; however, it is not a properly presented motion. Consequently, plaintiff **SHALL**, on or before **March 20, 2006,** electronically file a Motion for Leave to Amend, to which a copy of the Proposed Amended Complaint shall be attached.  Within the proper time period, defendants will have leave to respond to said motion, and plaintiff may reply thereto.  Therefore, defendant Chandarana's currently

pending motion to dismiss (Doc. Nos. 131) is **DENIED, WITHOUT PREJUDICE** to the re-filing of same if plaintiff is unable to plead fraud with sufficient particularity.

### B. Remaining Motions to Dismiss

The remaining motions to dismiss are (1) Defendant Professional Underwriters Agency, Inc.'s Motion to Dismiss Counts I and II of the Second Amended Complaint (Doc. No. 129); (2) Defendants Underwriters at Lloyd's London, Syndicates 2623, 623, 2488, 33, and Zurich Specialties London Limited's ("Underwriter defendants") Motion to Dismiss Counts I, II, and III of the First Amended Complaint (Doc. No. 78); and (3) Underwriter defendants' Motion to Dismiss Counts I, II and III of the Second Amended Complaint (Doc. No. 140)[4]. As plaintiff has now filed its second amended complaint, Underwriter defendants' Motion to Dismiss Counts I, II, and III of the First Amended Complaint (Doc. No. 78) is **DENIED AS MOOT.**

In the remaining motions, the parties move for an Order dismissing certain counts of plaintiff's complaint because (1) with respect to Counts I and II of the Second Amended Complaint, plaintiff has failed to allege fraud with the particularity required under Rule 9(b) of the Federal Rules of Civil Procedure; and (2) with respect to Counts I and III as to Underwriter defendants, failure to state a claim upon which relief may be granted for failure to allege with particularity the existence of an agency relationship between Underwriter defendants and PUA or CBB.

As discussed above, in response to defendants' motions and after presenting arguments against dismissal, plaintiff requests that the Court grant plaintiff leave to file an

---

[4]Defendants rely on the same arguments made in their prior motion to dismiss (Doc. No. 78).

19

amended complaint, and the Court has directed plaintiff to file a Motion for Leave to Amend on or before **March 20, 2006,** to which a copy of the Proposed Amended Complaint shall be attached. Within the proper time period, defendants will have leave to respond to said motion, and plaintiff may reply thereto. Therefore, defendants' currently pending motions (Doc. Nos. 129 and 140) are **DENIED, WITHOUT PREJUDICE** to the re-filing of same if plaintiff is unable to plead fraud and agency with sufficient particularity.

Therefore, for the foregoing reasons:

(1)     Henney & Partners, Ltd.'s Motion to Dismiss Third-Party Complaint for Insufficient Service of Process and Lack of Personal Jurisdiction (Doc. No. 56) is **GRANTED IN PART** as it relates to lack of personal jurisdiction, and **DENIED AS MOOT IN PART** as it relates to insufficient service of process;

(2)     Defendant Henney & Partners Ltd.'s Motion to Dismiss Second Amended Complaint for Lack of Personal Jurisdiction (Doc. No. 133) is **GRANTED**;

(3)     Defendant Christopher Henney's Motion to Dismiss Second Amended Complaint for Lack of Personal Jurisdiction (Doc. No. 151) is **GRANTED**;

(4)     Defendant Corrie Bauckham Batts, Ltd.'s Motion to Dismiss Cross-Claim for Lack of Personal Jurisdiction (Doc. No. 42) is **GRANTED**;

(5)     Defendant Corrie Bauckham Batts, Ltd.'s Motion to Dismiss Second Amended Complaint for Lack of Personal Jurisdiction (Doc. No. 114) is **GRANTED**;

(6)     Defendant Chandarana's Motion to Dismiss the Second Amended Complaint (Doc. No. 131) is **DENIED IN PART** as it relates to lack of jurisdiction and failure to state a claim, and **DENIED WITHOUT PREJUDICE IN PART** as it relates to failure to plead fraud with particularity;

(7)     Defendant Professional Underwriters Agency, Inc.'s Motion to Dismiss Counts I and II of the Second Amended Complaint (Doc. No. 129) is **DENIED WITHOUT PREJUDICE**;

(8)     Defendants Underwriters at Lloyd's London, Syndicates 2623, 623, 2488, 33, and Zurich Specialties London Limited's Motion to Dismiss Counts I, II, and III of the First Amended Complaint (Doc. No. 78) is **DENIED AS MOOT**; and

(9)    Defendant Underwriters at Lloyd's London, Syndicates 2623, 623, 2488, 33, and Zurich Specialties London Limited's Motion to Dismiss Counts I, II, and III of the Second Amended Complaint (Doc. No. 140) is **DENIED WITHOUT PREJUDICE**.


**IT IS SO ORDERED.**

                                                    /s/  FERNANDO  J.  GAITAN,  JR.
                                                    Fernando J. Gaitan, Jr.
                                                    United States District Judge

Dated: March 6, 2006   .
Kansas City, Missouri.

21